IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LAWRENCE FUGATE, | CV 05-6095-TC |
| Plaintiff, | |
| v. | OPINION & ORDER |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

COFFIN, Magistrate Judge:

Plaintiff Lawrence Fugate brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). As

1 - OPINION & ORDER

discussed below, the Commissioner's decision is remanded for further administrative proceedings.

## BACKGROUND

Fugate was born October 31, 1946 and was fifty-eight years old at the time of the administrative hearing. Tr. 256.[1] He received a GED certificate from community college. Tr. 257. Fugate worked construction jobs and as a corrections officer in a juvenile detention facility. Tr. 69, 278. He injured his right knee on the job in 1987. Fugate had two arthroscopic surgeries which were not successful. Surgeons removed his patella in 1991 due to patellofemoral osteoarthrosis. Tr. 199-200. He reinjured his knee in 1998 and his orthopedic surgeon advised him to discontinue work that required "significant labor" and recommended permanent restrictions on the amount of walking, standing, twisting, climbing, crawling, and use of inclines that he undertook. Tr. 201. However, he attempted to continue working various jobs until 2002 because it was all he "knew to do." Tr. 259. Fugate applied for DIB on February 24, 2003, alleging disability from June 30, 2002. Fugate satisfied the insured status requirements for a claim under Title II through December 31, 2006, and must establish that he was disabled on or before that date to prevail on his DIB claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

Fugate was diagnosed with multilevel degenerative changes in the lower lumbar spine and degenerative joint disease of the right knee. He is also missing a toe due to amputation. Tr. 153, 157, 169. A hearing was held before an Administrative Law Judge (ALJ) on November 9, 2004.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

2 - OPINION & ORDER

The ALJ issued an opinion November 24, 2004 finding Fugate was not disabled which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C § 423(d)(1)(A). The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545(a); Social Security Ruling (SSR) 96-8p. Fugate challenges the ALJ's determination of his RFC.

At step four, the Commissioner must determine whether the claimant retains the RFC to perform work he has done in the past. If the ALJ determines that he retains the ability to perform his past work, the Commissioner will find the claimant not disabled. 20 C.F.R. § 404.1520(f). The ALJ determined that Fugate's RFC precluded him from performing his past relevant work and this finding is not challenged.

3 - OPINION & ORDER

At step five, the Commissioner must determine whether the claimant can perform work that exists in the national economy. *Yuckert*, 482 U.S. at 141-142; 20 C.F.R. § 404.1520(e), (g). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 404.1520(g). Fugate challenges the Commissioner's finding at step five.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir 1986).

It is the responsibility of the ALJ to determine credibility, resolve conflicts in the medical evidence and resolve ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1098. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1177-1178 (9th Cir.) (2000), *cert. denied*, 531 U.S. 1038 (2000).

4 - OPINION & ORDER

## THE ALJ'S FINDINGS

The ALJ determined that Fugate's "low back pain, right knee pain, status-post multiple surgeries" were severe impairments. Tr. 16. He determined these conditions did not meet or medically equal an impairment in the Listings of Impairments, 20 C.F.R. § 404, Subpt. P., Appendix 1. The ALJ assessed Fugate's RFC as limited to light work with restrictions. He cited a letter of July 25, 2003 by Dr. Lantz, Fugate's orthopedic surgeon:

> Dr. Lantz stated that the claimant was significantly limited by chronic knee pain, due to multiple medical procedures and associated degenerative arthritis. Consequently, the claimant was unable to kneel, squat, twist, crawl, or climb. He is unable to lift or carry any sort of heavy weight, and would have difficulty with any type of inclines or steps.

Tr. 17. The ALJ stated that "the additional limitations recommended by Dr. Lantz, a treating specialist, are also accommodated" into the RFC, and these restrictions do not preclude all light work. Tr. 17. In determining the RFC, the ALJ found Fugate not fully credible regarding his inability to perform light work. Tr. 18.

The ALJ determined that Fugate was unable to perform his past relevant work. Tr. 18. He cited the testimony of the Vocational Expert (VE) at the hearing. The VE testified an individual with Fugate's RFC, age, education, and past relevant work history had skills that were transferable to other jobs. The jobs present in significant numbers in the national economy include electric assembler, cable assembler, and gate tender. Tr. 19. The ALJ determined that Fugate could make an adjustment to work that exists in significant numbers in the economy and was not disabled. Tr. 19.

5 - OPINION & ORDER

## DISCUSSION

Fugate asserts the ALJ erred by failing to give clear and convincing reasons for rejecting his testimony. He also contends the ALJ did not properly consider the lay evidence. Fugate further asserts that the Commissioner failed to meet her burden at step five and did not demonstrate that he could perform other work that exists in the national economy.

### I. RFC Determination

#### A. Medical Evidence

The ALJ determined that the medical evidence was consistent with a "reduced range of light work." Tr. 16. After Fugate's patellectomy in February 1991, his orthopedic surgeon, Dr. James, completed a final follow up on September 16, 1991. He noted the restrictions on squatting, kneeling, crawling, climbing and going up inclines that are included in Fugate's RFC. Dr. James also noted the additional following restrictions:

> He can sit eight hours a day with breaks and stand one to two hours a day with breaks or rests. His walking tolerance is about one hour in an eight hour day and he can alternately sit or stand about eight hours.

Tr. 203. Dr. Lantz became Fugate's orthopedic surgeon in 1998. He examined him in April 1998 for a reinjury to his knee during work and prescribed Ibuprofen and fitted him with a hinged DonJoy (knee brace). Tr. 202. Dr. Lantz examined Fugate a month later in May, 1998 and stated "I would recommend permanent restrictions which are the same as Dr. James recommended on September 16, 1991." Tr. 201. Dr. Lantz examined Fugate in July, 2003 and recommended continued conservative treatment and no additional surgery. He also noted that Fugate complained of increased pain in his knee and low back pain. Tr. 169.

6 - OPINION & ORDER

Dr. Allen, the agency consultant who examined Fugate on March 29, 2003, concluded that Fugate's "degenerative joint disease in his right knee would limit his ability to ambulate for distances and it would be expected that this would cause him a significant problem." Tr. 156. He also noted that Fugate would be unable to walk or stand for more than six hours a day, and that his knee brace was medically necessary. *Id.*

Light work requires "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). The Social Security Rulings define light work as standing or walking for approximately six hours in an eight hour workday. SSR 83-10. Dr. Allen, the agency consultant, reached a conclusion that may be supportive of light work. However, the treating physicians, Drs. James and Lantz, identify restrictions on walking and standing that appear to be inconsistent with light work and more consistent with sedentary work. The ALJ has a duty to resolve inconsistencies in the medical record and provide a rationale for his interpretation of medical evidence. *Reddick v. Chater,* 157 F. 3d 715, 725 (9th Cir. 1998). The ALJ did not resolve or even discuss these inconsistencies in the medical record and must do so on remand.

### B. Credibility

Fugate asserts that the ALJ erred in rejecting his testimony regarding his pain, level of mobility, and the need to elevate and ice his leg due to swelling in the knee. The ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281-1282 (9th Cir. 1996). Fugate has medically determinable impairments which could produce his symptoms. When there is an underlying impairment and no evidence of malingering, an ALJ may discredit a claimant's testimony

regarding the severity of symptoms only by providing clear and convincing reasons based on specific findings. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen*, 80 F.3d at 1283, 1284. The ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Id.* at 1284. The ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id.* In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Id*; SSR 96-7p.

Although the ALJ found Fugate's testimony and allegations "largely credible regarding his impairments," the ALJ found "he is not credible should he assert that he cannot perform a reduced range of light work." Tr. 18. The ALJ found Fugate has an RFC for light work with restrictions on his ability to the kneel, squat, crawl, twist, climb, or handle inclines or steps, but included no limitation on walking or standing. The ALJ did not address or note the inconsistency between the limitations on walking and standing endorsed by Fugate's treating physicians in the medical record and that of the agency consultant, Dr. Allen. Although the ALJ determined the medical evidence supported his RFC and undermined Fugate's credibility, it is clear that there are unaddressed inconsistencies in the medical record. Fugate's testimony is supported by his treating physicians who noted chronic pain and significant limitations in his mobility and ability to stand that are not addressed in the RFC.

The ALJ also noted no records of treatment for Fugate's knee between 1998 and 2003, and that he took over the counter medications, such as Tylenol, Advil, and Aleve for his symptoms.

Social Security Rulings caution that these factors are not enough to impugn credibility without investigating reasonable explanations:

> However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects for a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . The individual may be living with the symptoms, seeing a medical source only as needed . . . The individual may not take prescription medication because the side effects are less tolerable than the symptoms.

SSR. 96-7P, *7,8. Fugate had three knee surgeries, including removal of his knee cap. Fugate testified that he has no insurance, although his worker compensation claim may pay for further knee treatments. Tr. 257. However, no further surgical procedures were or have been recommended for his knee. Tr. 169, 203, 258, 277. In addition, the ALJ failed to question Fugate about the reasons for taking over the counter medications instead of prescription drugs for pain relief.

The ALJ also found that Fugate's description of his activities of daily living support a light level of work:

> The claimant told Dr. Allen that he used the brace when he was going to engage in strenuous activities. He used a cane when pain was exacerbated. He described his regular activities as performing light chores such as washing dishes, although sweeping or vacuuming were very difficult. He could go shopping for a short time.

Tr. 16. These activities of daily living are not consistent with a light level of work as there is no indication that Fugate could do a significant amount of walking or standing. To the contrary, the activities indicate he finds easy chores, such as sweeping, very difficult. Even if he were able to do more activities at home, "many home activities may not be easily transferable to a work environment, where it might be impossible to rest periodically, or take medication." *Smolen,* 80 F. 3d at 1287 n.7, citing *Fair v. Bowen,* 885 F. 2d 597, 603 (9th Cir. 1989). Although the ALJ remarked on an apparent

9 - OPINION & ORDER

inconsistency in Fugate's reported use of a cane to Dr. Allen, this appears to be a relatively minor point in fact and in his findings.

Finally, the ALJ noted Fugate continued to work, or attempted to work, following his surgeries. Fugate applied for disability in 2002. His testimony regarding his latest work history reveals work and attempts to work that lasted until his employers discovered his knee problem or he was unable to complete the work. He quit two jobs before being fired for being unable to physically perform the work. Tr. 262-263. Fugate was terminated from his last job after five weeks. He testified, " I would spend most of my evenings on the bed with my pillows under my legs and ice trying to get the swelling back down in my legs so I could possibly make it to work the next day." Tr. 272. When asked why he went back to work with his knee problems, Fugate replied, "I had some real bad teeth and I needed to get some money to get them fixed, get them pulled and some dentures . . ." Tr. 264. Fugate's continued determination to work may have exacerbated his knee condition. However, it is more indicative of not malingering rather than not being credible.

The ALJ failed to articulate clear and convincing reasons supported by substantial evidence in the record for discrediting Fugate's assertion he has limitations in excess of those in his RFC assessment. The ALJ must resolve the inconsistencies in the medical record and then reevalute the entirety of the Fugate testimony.

C.   **Lay Witness Statements**

Fugate asserts that the ALJ failed to properly consider the testimony of Fugate's sister, Donna Irons. "Friends, family members, and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition." *Dodrill*, 12 F. 3d at 918,

919. Such testimony cannot be disregarded without comment. *Nguyen v. Chater*, 100 F. 3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Dodrill*, 12 F. 3d at 919. Inconsistency with medical evidence is one such reason. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001). Ms. Irons stated that Fugate was in "extreme pain" on a daily basis and his activities were limited. Although the ALJ mislabeled Ms. Irons as Fugate's wife, that is most likely a clerical error. The ALJ stated:

> For similar reasons, statements such as those made by his brother, former employer, or wife must be discounted, should they allege that he could not perform at a level within his residual functional capacity. These reports, in any event, establish that the claimant has not been able to perform heavy work, such as at his former employment, but are not inconsistent with lesser work.

Tr. 18. The ALJ must evaluate the lay witness testimony on remand after resolution of the inconsistent medical evidence and appropriately address the testimony of Ms. Irons, i.e., if it should be given weight or if there are germane reasons for discounting the testimony.

## II. Vocational Evidence

Fugate asserts that the Commissioner failed to meet her burden of proving that he has skills that are transferable to other work in the national economy. This case is being remanded due to issues with the determination of credibility and unresolved inconsistencies in the medical record. The ALJ must resolve these issues before determining Fugate's RFC. At that point, the ALJ must determine whether Fugate's job skills are transferable to other jobs in the national economy and should consider, among other things, the following. Fugate was 58 years old at the time of the hearing and is of "advanced age" under the Social Security regulations. 20 C.F.R. § 404.1563(e). "We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work." *Id.* "The work must be 'less demanding' than that previously performed by

11 - OPINION & ORDER

the claimant; at the same time, though, it cannot require so little skill that anyone at all could do it, as older people are at a competitive disadvantage for such jobs." *Terry v. Sullivan,* 903 F.2d 1273, 1276 (9th Cir.1990). If a person of advanced age is limited to light or sedentary work, the burden is on the Commissioner to show he has acquired job skills from past work that are easily transferable to skilled or semi-skilled work. *Id* at 1275. 20 C.F.R. § 404.1568(d). The showing the Commissioner must make is different depending on whether it is light or sedentary work. *Id.*

All of plaintiff's other arguments have been considered and found unpersuasive.

## CONCLUSION

This action is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. As set forth in more detail in this opinion, the ALJ shall resolve inconsistencies in the medical record, reevaluate the entirety of the Fugate testimony, reevaluate the lay witness testimony, determine an RFC and make the appropriate finding regarding disability.

DATED this 2 day of Aug, 2006.

Thomas M. Coffin
United States Magistrate Judge

12 - OPINION & ORDER